# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ZURAB PAPOSHVILI,

       Petitioner,

    v.                                                                    Case No. 2:26-cv-00352-KWR-SCY

KRISTI NOEM, *Secretary of the Department*
*of Homeland Security*,
DORA CASTRO, *Warden of the Otero County Processing Center*,
MARY DE ANDA-YBARRA, *ICE Field Office Director*, *El Paso Field Office*,
TODD M. LYONS, *Acting Director of U.S. Immigration and Customs Enforcement*, *and*
PAMELA BONDI, *Attorney General of the United States*,

       Respondents.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Petitioner Zurab Paposhvili's Petition for Writ of Habeas Corpus (Doc. 1) and Motion for Temporary Restraining Order (Doc. 4). This Petition turns on whether Petitioner is detained pursuant to 8 U.S.C. § 1226(a) or 8 U.S.C. § 1225(b)(2)(A). The Court finds that Petitioner's detention falls under § 1226(a) and that he is entitled to an individualized bond hearing before an immigration judge. Having reviewed the parties' pleadings, exhibits, and the relevant law, the Court finds that the Petition is well-taken, and therefore, is **GRANTED in part**.

### BACKGROUND

On or about March 17, 2022, Petitioner, a citizen of Georgia, entered the United States without inspection. Doc. 1 ¶ 17. After his entry, at an unspecified time, Petitioner was detained by Respondents. *Id.* Shortly thereafter, Petitioner was released on his own recognizance. *Id.* After his release, Petitioner filed applications for asylum, employment authorization, and a social

security number. *Id.* ¶ 18. He received authorization to work and a social security number. *Id.* Petitioner has no criminal history and received a commercial driver's license. *Id.* ¶¶ 2, 18.

On January 8, 2026, Enforcement and Removal Operations officers approached Petitioner at a truck stop and knocked on his truck door. *Id.* ¶ 3. Petitioner answered questions and provided identification. *Id.* Following the questioning, the officers arrested Petitioner. *Id.*

On September 5, 2025, the Board of Immigration Appeals issued a decision holding that immigration judges lacked authority or jurisdiction to consider bond requests for any person who entered the United States without admission. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 225 (BIA 2025) ("Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission."). In light of *Hurtado*, Petitioner has remained in custody without an opportunity to post bond or request conditional release because his detention has been classified as mandatory under § 1225(b). Petitioner requests that the Court order his immediate release, Doc. 1 at 9, or alternatively, order Respondents to provide him with a bond hearing, Doc. 10 at 3 (Pet'r's Reply).

On February 12, 2026, the Court issued an Order to Answer (Doc. 5). Respondents filed their response on March 5, 2026, in which they incorporate arguments raised in a prior case before the Court, *Munoz Teran v. Bondi*, No. 2:25-cv-01218-KWR-SCY, 2026 WL 161527 (D.N.M. Jan. 21, 2026). Doc. 9 at 3–4 (Resp't's Resp.). In *Munoz Teran*, the respondents did not raise the issues of administrative exhaustion or certain jurisdiction-stripping provisions. As such, the Court declines to raise either issue *sua sponte*. The crux of this Petition is whether Petitioner is detained pursuant to § 1225(b)(2)(A) or § 1226(a).

**LEGAL STANDARD**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A challenge to immigration detention is "properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

**DISCUSSION**

Petitioner argues that his arrest and continued detention are unlawful and unconstitutional. Doc. 1 ¶ 4. Respondents contend that Petitioner is mandatorily detained pursuant to § 1225(b)(2)(A). As explained below, the Court finds that Petitioner, who has lived in the United States for years, is subject to discretionary detention under § 1226(a) and entitled to an individualized bond hearing before an immigration judge.

I.  **Whether mandatory detention under § 1225(b)(2)(A) or discretionary detention under § 1226(a) applies.**

This Petition addresses the narrow inquiry of whether § 1225(b)(2) or § 1226(a) governs Petitioner's detention. Respondents argue that § 1225(b)(2)(A) governs his detention and that he is not entitled to a bond hearing. Doc. 9 at 1–2. Petitioner posits that his detention is governed under § 1226(a), not § 1225(b)(2)(A). Doc. 10 at 3. After a plain reading of § 1225(b)(2)(A), the Court agrees with Petitioner.

When interpreting a statute, courts first "examine the statute's plain text" and "[a]bsent ambiguity, [the] analysis ends there." *United States v. Koerber*, 10 F.4th 1083, 1112 (10th Cir. 2021). Should the analysis continue, the Court considers the "language itself, the specific context

3

in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1381 (10th Cir. 2009) ("We also take into account the 'broader context of the statute as a whole' when ascertaining the meaning of a particular provision." (citation omitted)). Courts also consider traditional canons of statutory interpretation. *Conrad*, 585 F.3d at 1381; *Ramah Navajo Chapter v. Salazar*, 644 F.3d 1054, 1062 (10th Cir. 2011). Generally, the Court considers non-textual evidence bearing on Congress's intent or purpose, such as legislative history, only if the statutory language is ambiguous. *See, e.g.*, *United States v. Husted*, 545 F.3d 1240, 1247 (10th Cir. 2008) ("[I]t is a longstanding principle that absent ambiguity we cannot rely on legislative history to interpret a statute.").

Under the Immigrant and Nationality Act ("INA"), two statutes generally govern a noncitizen's detention pending a final order of removal: §§ 1225 and 1226. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Section 1225, which mandates detention and does not afford a bond hearing, applies when "an applicant for admission" is "seeking admission" and "not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A). Section 1226 provides that a noncitizen "may be arrested and detained" pending a removal decision. § 1226(a). Under § 1226(a), the Attorney General may detain the arrested noncitizen, release them on bond, or release them on conditional parole. Section 1226(c) mandates detention for a noncitizen that is (1) present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits" to committing certain criminal acts. 8 U.S.C. § 1226(c)(1)(E).

In sum, immigration law authorizes the detention of "certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (quoting *Jennings*, 583 U.S. at 289). For Petitioner's detention to be governed by § 1225(b)(2)(A), the Court must find that Petitioner is (1) an "applicant for admission," (2) who is "seeking admission," and (3) "not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A).

Petitioner is likely an "applicant for admission" as defined by statute. "[A]pplicant for admission" is defined as "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1) "Admission" and "admitted" mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). Here, Petitioner is present in the United States, and he has not been inspected or admitted. Doc. 1 ¶ 1. Thus, per the statutory definition, Petitioner may be deemed an "applicant for admission" thereby satisfying the first criteria of § 1225(b)(2)(A).

The crux of the § 1225(b)(2)(A) inquiry is whether Petitioner can be deemed "seeking admission." As explained below, after a plain reading of the statute, the Court finds that Petitioner, who has been living in the United States for years, is not "seeking admission."

The Court begins with the plain text of the phrase "seeking admission." *See Koerber*, 10 F.4th at 1112. Since "seeking" is statutorily undefined, the Court will first consider the word "admission." "Admission" is statutorily defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." § 1101(a)(13)(A). "Entry" is statutorily undefined. Respondents do not assert that the word "entry" has any unusual, technical meaning, and therefore, the Court will apply its "ordinary, contemporary, common meaning." *Star*

5

*Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017). "Entry" ordinarily means "[t]he action or an act of entering a place, area, building, etc." *Entry*, Oxford English Dictionary, https://www.oed.com/dictionary/entry_n?tab=meaning_and_use#5515547 (last visited Mar. 10, 2026); *see also Entry*, *Black's Law Dictionary* (12th ed. 2024) ("*Immigration*. Any entrance of an alien into the United States, whether voluntary or involuntary."). Thus, the word "admission," as used in § 1225(b)(2)(A), refers to a noncitizen's lawful act of physically entering the United States after inspection and authorization by an immigration officer.

Turning to the statutorily undefined word "seeking," in this context, it ordinarily means trying to obtain something or trying to bring about or effect. *Seek*, Oxford English Dictionary, https://www.oed.com/dictionary/seek_v#23724107 (last visited Mar. 10, 2026). In choosing the present participle "seeking," courts should give effect to Congress's verb choice and find that "seeking" signals present and continuous action. *Carr v. United States*, 560 U.S. 438, 448 (2010) ("Consistent with normal usage, we have frequently looked to Congress' choice of verb tense to ascertain a statute's temporal reach."); *see also Present Participle*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/present%20participle (last visited Mar. 10, 2026). Therefore, the Court finds that a plain reading of the phrase "seeking admission" demonstrates that § 1225(b)(2)(A) applies to noncitizens who are presently trying to lawfully and physically enter the United States.[1] Section 1225(b)(2)(A) does not apply to noncitizens who, like Petitioner, have

---

[1] The Court understands the ordinary meaning of the word "entry," as used in the statute, to mean the physical act of going into the country. The meaning aligns with how "entry" is understood and used by the United States Supreme Court in the immigration context. The word "entry" has long referred to physically going into the country, regardless of whether the entrant is legally in the United States. *See, e.g.*, *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1058) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality."); *Zadvydas*, 533 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.").

lived in the United States for an extended duration and are not presently seeking lawful entry into the United States.

8 U.S.C. § 1225(a)(3) indicates that Petitioner is not "seeking admission." Section 1225(a)(3) provides that "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." *Id.* The word "or" is "almost always disjunctive, that is, the words it connects are 'to be given separate meanings.'" *United States v. Woods*, 571 U.S. 31, 45 (2013) (citation omitted). Additionally, the phrase "or otherwise" signals that the phrase "applicants for admission" does not have the same meaning as "seeking admission." Additionally, the use of the phrase "or otherwise" signals that the term "applicants for admission" has a different meaning than the term "seeking admission." *Or Otherwise*, Oxford English Dictionary, https://www.oed.com/dictionary/otherwise_n?tab=meaning_and_use#33058328 (last visited Mar. 10, 2026) ("In another way or ways; in a different manner; by other means; in other words; differently.").[2] Thus, a plain reading of § 1225(a)(3) demonstrates that Petitioner can be deemed an "applicant for admission" without necessarily being deemed "seeking admission."

Further, Respondents interpretation renders superfluous recent amendments to 8 U.S.C. § 1226(c). Section 1226(c)(1)(E) mandates detention for certain noncitizens who are implicated in certain crimes. It requires detention for a noncitizen who is (1) inadmissible as an alien present in

---

[2] The grammatical placement of "or otherwise" also indicates that "seeking admission" must mean something different than "applicants for admission." *Or Otherwise*, Oxford English Dictionary, https://www.oed.com/dictionary/otherwise_n?tab=meaning_and_use#33058910 (last visited Mar. 10, 2026) ("[F]ollowing a noun, adjective, adverb, or verb, to signify a corresponding word, thing, idea, etc., of opposite or alternative meaning" (citation modified)). Here, the phrase "or otherwise" follows a noun, "applicants for admission," signifying that the phrase "seeking admission" is a "corresponding word, thing, idea, etc., of opposite or alternative meaning." *Id.*; *see also* § 1225(a)(3).

the United States without being admitted or paroled, and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits" to committing certain crimes. Respondents' interpretation of § 1225(b)(2)(A) would require the detention of every noncitizen who is present in the country without being admitted or paroled. Such an interpretation would render the recent § 1226(c)(1)(E) amendment superfluous in that detention would be required regardless of the noncitizen's criminal involvement.

The Supreme Court, in dicta, has recognized that § 1225(b) generally applies "to aliens seeking entry into the United States" and that § 1226(a) "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 297, 303. The *Jennings* Court further noted that § 1226(a) creates a default rule for noncitizens present in the United States "by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings," and also permitting "the Attorney General to release those aliens on bond." *Id.* at 303. Thus, the Supreme Court's construction of §§ 1225(b) and 1226(a) align with this Court's reading of the phrases "applicant for admission" and "seeking admission."

The Court's statutory reading of § 1225(b)(2)(A) is consistent with the decisions of multiple courts, which have found that a person who has been present in the United States for an extended period of time is not "seeking admission" and therefore not subject to mandatory detention under § 1225(b)(2)(A). *See, e.g., Castañon-Nava*, 161 F.4th at 1061; *see also Barco Mercado v. Francis*, __ F. Supp. 3d __, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *13 (S.D.N.Y. Nov. 26, 2025) (collecting cases in Appendix A); *Pu Sacvin v. De Anda-Ybarra*, No. 2:25-CV-1031-KG, 2025 WL 3187432, at *3 (D.N.M. Nov. 14, 2025) ("Noncitizens seeking admission are those who have not effected an entry into the United States." (citation modified)); *Buenrostro-Mendez v. Pamela Bondi*, 166 F.4th 494, 510 (5th Cir. 2026) (Douglas, J., dissenting).

8

Applying this statutory reading to the present facts, the Court finds that Petitioner is not "seeking admission" under § 1225(b)(2)(A).

## II. The Court finds that a bond hearing is an appropriate remedy.

Petitioner requests immediate release, Doc. 1 at 9, or that the Court order Respondents to provide a bond hearing, Doc. 10 at 3. Petitioner briefly argues that his detention was "blatantly unlawful from the start" and requests immediate release; however, Petitioner requests any other relief that the Court "deems just and proper," Doc. 1 at 9, and he requests a bond hearing, rather than immediate release, in his reply, Doc. 10 at 3. Petitioner fails to adequately argue or provide a reason why immediate release is necessary as opposed to a bond hearing. Thus, the Court, to give Respondents the discretion afforded by § 1226(a), concludes that a bond hearing is warranted.

Section 1226(a) gives Respondents discretion to detain, release on bond, or parole a noncitizen. Generally, the release or bond decision is discretionary. 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.").

Federal district courts have broad equitable powers to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). A federal court is vested with "the largest power to control and direct the form of judgment to be entered in cases brought up before it on *habeas corpus*." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). In issuing a writ of habeas corpus, a federal court has the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243. Assuming that the Court has the authority to order Petitioner's immediate release, the Court, in its discretion, orders Respondents to provide Petitioner an individualized bond hearing so that he may receive the process he is due under the statute. *See*

§ 1226(a) (providing that the Attorney General may continue to detain a noncitizen or release him on bond or parole pending a decision of removal).

Petitioner bears the burden of proof to demonstrate that he is entitled to relief or a remedy, including whether the burden should be placed on the Respondents to justify his detention at a bond hearing. *See* 28 U.S.C. § 2241; *see Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) ("[I]t was error for the District Court to effectively impose on the Government the burden of proving that [petitioner] was *not* 'in custody in violation of the Constitution or laws or treaties of the United States.'" (citing § 2241(c)(3)). Petitioner also bears the burden to demonstrate a "deprivation of rights leading to unlawful detention" under § 2241. *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009); *see also Smith v. Workman*, 550 F.3d 1258, 1273 (10th Cir. 2008) (noting that, in the context a *Brady* violation, the petitioner "bears the burden of showing that the prosecution suppressed material evidence favorable" to the petitioner).

Here, Petitioner examines his due process claim under the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), but his analysis fails to demonstrate why a due process violation requires release over a bond hearing. Doc. 1 ¶¶ 26–33. Petitioner merely uses the *Mathews* analysis to demonstrate his position that Respondents "failure to provide . . . procedural safeguards resulted in an unconstitutional deprivation of liberty." *Id.* ¶ 33. The inquiry remains as to whether his due process claim requires immediate release as opposed to a bond hearing. The Court will not undertake Petitioner's inquiry for him. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."); *see also Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (noting that a court has no obligation to make arguments or perform research on behalf

of litigants). Therefore, the Court finds that Petitioner's due process argument and *Mathews* analysis do not demonstrate that immediate release is required over a bond hearing.

Petitioner's two-sentence argument that Respondents arrested him in violation of the Fourth Amendment does not demonstrate that immediate release is required as opposed to a bond hearing. Petitioner points to another district court's determination that "blatantly unlawful detention from the start" requires "immediate release." Doc. 1 ¶ 35. However, the district court had determined that the case was "a rare instance in which there [was] no appropriate remedy to fix the egregious violations of Petitioner's fundamental rights." *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 372 (S.D.N.Y. 2019). In *Martinez*, the court found that "the Government's conduct ha[d] simply been too flagrant and tainted . . . to allow any of their acts . . . to hold weight." *Id.* Here, Petitioner does not provide facts demonstrating that Respondents' conduct rivals the conduct in *Martinez*. Petitioner challenges Respondents' statutory interpretation and presents a brief argument alleging a Fourth Amendment violation. Even assuming Petitioner's allegations are true, such conduct does not rise to the level the court addressed in *Martinez*.

Not only is *Martinez* not binding and distinguishable, but Fourth Amendment precedent does not favor immediate release over a bond hearing. Evidence collected as part of an unconstitutional seizure is generally inadmissible. *United States v. Samilton*, 56 F.4th 820, 826 (10th Cir. 2022) (citing *Terry v. Ohio*, 392 U.S. 1, 29 (1968)). However, "an illegal arrest has no bearing on a subsequent deportation proceeding." *United States v. Olivares-Rangel*, 458 F.3d 1104, 1110 (10th Cir. 2006) (quoting *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1040 (1984)). "It was in [the context of a deportation proceeding] in which the Court noted that the 'body' or identity of a defendant is never suppressible as fruit of an unlawful arrest." *Id.* To the extent Petitioner is arguing that an unconstitutional arrest mandates release, precedent indicates otherwise. *See United States*

*ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923) (finding that a habeas petition is "not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest"); *see also Stone v. Powell*, 428 U.S. 465, 485 (1976) (noting that "judicial proceedings need not abate when the defendant's person is unconstitutionally seized") (citing *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975)). Accordingly, in light of relevant precedent and Petitioner's failure to argue why immediate release is required over a bond hearing, the Court finds that any Fourth Amendment violation that may have occurred here does not warrant immediate release.

### III.     **This opinion and the judgment should not be construed as addressing detention under 8 U.S.C. § 1231, if that provision becomes applicable.**

The narrow issue of whether Petitioner's detention is governed by § 1225 or § 1226 *pending a decision on his removal* controls the outcome of this Petition. Neither party addresses whether § 1231 applies and nor does this order.

Once an order of removal becomes final, § 1231 governs. *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 574 (2022) ("After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day removal period, during which the Government 'shall' detain the noncitizen."). Section 1231 governs the detention of noncitizens "during" and "beyond" the "removal period." 8 U.S.C. § 1231(a)(2)–(6). Generally, the Attorney General shall remove a noncitizen within 90 days, a time frame known as the "removal period." *Id.* § 1231(a)(1)(A). The removal period begins once a removal order becomes "administratively final," *id.* § 1231(a)(1)(B), meaning the order has been affirmed by the BIA or the time for seeking review has expired, *id.* § 1101(a)(47)(B). *Riley v. Bondi*, 606 U.S. 259, 267 (2025) ("An order of removal becomes final at the earlier of two points: (1) 'a determination by

the [BIA] affirming such order,' or (2) 'the expiration of the period in which the alien is permitted to' petition the BIA for review of the order.") (citing § 1101(a)(47)(B)). Detention is mandatory during the removal period. § 1231(a)(2).

Neither party contends that § 1231 applies here. Neither party alleges that removal proceedings have become final. The Court determines the narrow issue of whether § 1225 or § 1226 applies. The Court's order and judgment do not opine on whether or when in the future Petitioner may be detained pursuant to § 1231.

### IV.   The Court need not rule on Petitioner's remaining claims.

Petitioner asserts violations of the INA, due process, and the Fourth Amendment. Doc. 1 ¶¶ 22–34. Because the Court grants habeas relief, the Court need not address Petitioner's additional claims or declaratory relief. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (finding it unnecessary to address an additional claim in a habeas petition after granting full relief on one claim because "any relief [petitioner] could obtain on that claim would be cumulative"); *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) (stating that "[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them"); *Scott v. Mullin*, 303 F.3d 1222, 1224 (10th Cir. 2002) (declining to address the remaining claims in a habeas petition after already granting habeas relief on one claim).

### V.   Cost and fees under the EAJA.

Petitioner requests an award of "reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act." Doc. 1 at 9. In light of recent Tenth Circuit precedent, the Court finds that it may consider Petitioner's request for costs provided that Petitioner follows proper EAJA procedure.

> The EAJA provides for the following procedure:
>
> [A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The Tenth Circuit recently held that the EAJA "unambiguously authorize[s] fees in habeas actions challenging immigration detention." *Daley v. Ceja*, 158 F.4th 1152, 1159, 1166 (10th Cir. 2025).

A fee award is required if (1) the petitioner prevails, (2) the Government's position was not "substantially justified," and (3) there are no special circumstances rendering an award of fees unjust. *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (quoting § 2412(d)(1)(A)). While fees are authorized, the EAJA requires that Petitioner, "within thirty days of final judgment in the action, submit to the court an application for fees or other expenses" and allege that "the position of the United States was not substantially justified." § 2412(d)(1)(A), (B). Upon filing this application, the Government must justify its position in any underlying proceedings and district court litigation. *See Hackett*, 475 F.3d at 1170.

Since the Court grants Petitioner habeas relief, should Petitioner pursue costs and fees, he is instructed to file an EAJA application following the appropriate procedure.

## CONCLUSION

The Court concludes that Petitioner's detention pending a decision on his removal is governed by § 1226(a), not § 1225(b)(2)(A). Accordingly, the Petition (Doc. 1) is granted in part. Respondents are directed to arrange an individualized bond hearing pursuant to § 1226(a) for Petitioner before an immigration judge within **five (5) days** of the entry of this order. Respondents shall not deny Petitioner bond or parole on the basis that § 1225(b) requires mandatory detention.

However, the Court makes no determination whether or when in the future § 1231 applies to his detention. The parties are ordered to file a status report within **seven (7) days** of the entry of this order. The Court will enter a separate judgment.[3]

**IT IS THEREFORE ORDERED** that Petitioner's Petition (Doc. 1) is hereby **GRANTED in part** for reasons described in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Temporary Restraining Order (Doc. 4) is **DENIED as moot**, because the Court grants habeas relief and will enter final judgment concurrently with this order.

**IT IS FURTHER ORDERED** that Respondents shall provide Petitioner an individualized bond hearing before an immigration judge pursuant to § 1226(a), as opposed to § 1225(b), within **five (5) days** of the entry of this order, provided that the Court makes no determination whether or when in the future § 1231 provisions may apply.

**IT IS FINALLY ORDERED** that the parties are directed to file a joint status report within **seven (7) days** of the entry of this order.

\_\_\_\_\_/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE

---

[3] The Court need not delay entry of judgment to wait for Respondents to comply with the Court's order. The Court "always retains jurisdiction to enforce its lawful judgments, including habeas judgments." *Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010); *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992) (explaining that district court has authority to enforce its habeas judgment).